AO 91 (Rev. 11/11)   Criminal Complaint

**FILED**

Aug 14 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

# UNITED STATES DISTRICT C

for the

Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| SAMIR GRAY | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Case No.   3-20-mj-71144 MAG

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   July 22, 2020 until August 12, 2020   in the county of   San Francisco   in the

Northern   District of   California   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Dealing firearms without a license |
| | |
| | Maximum Penalties: |
| | Maximum term of imprisonment: 10 years |
| | Maximum fine: $250,000 |
| | Maximum term of supervised release: 3 years |
| | Mandatory $100 special assessment |
| | Forfeiture |

This criminal complaint is based on these facts:

See attached affidavit of Special Agent Daniel Garza

☑ Continued on the attached sheet.

Approved as to form  */s/ Mari Overbeck*
　　　　　　　　　AUSA  Mari Overbeck

Sworn to before me by telephone.

Date:　　08/14/2020

City and state:　　San Francisco, California

/s/
*Complainant's signature*

Daniel Garza, Special Agent ATF
*Printed name and title*

*Judge's signature*

Hon. Thomas S. Hixson, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Daniel Garza, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant authorizing the arrest of Samir GRAY for dealing firearms without a license in violation of Title 18, United States Code, Section 922(a)(1)(A), from July 22, 2020 until August 12, 2020, in the Northern District of California.

## SOURCES OF INFORMATION

2.      This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant.  I have not included every fact known to me concerning this investigation.  Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3.      I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, information provided by reports of other law enforcement officers, information provided by photographic evidence, and information provided by records and databases.  I believe these sources to be reliable.  Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim.  This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

## AFFIANT BACKGROUND

4.      I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so sworn since April of 2013.  I am presently assigned to the ATF Metro Field Office in San Francisco, California.  I am a law enforcement

officer of the United States within the meaning of 18 U.S.C. § 2510(7).

5.      As an ATF Special Agent, I have conducted and participated in both state and federal investigations involving the trafficking of firearms and distribution of controlled substances.  I have investigated and assisted in the prosecution of criminal street gangs engaged in illegal narcotics and firearms trafficking.  During these investigations, I have used and participated in various types of investigative techniques, including the use of electronic surveillance; undercover agents and informants; and controlled purchases of firearms and narcotics from suspects.  I also have participated in physical surveillance operations and in the execution of state and federal arrest warrants and search warrants.

6.      I have interviewed numerous individuals who illegally possess, traffic, or otherwise transfer firearms, as well as conferred with other law enforcement officers about the slang and codes used by individuals engaged in illegal firearm and ammunition sales, as well as the use of telephones, e-mail, social media, and other methods of communication to conduct their criminal activities.

7.      The investigations I have participated in have resulted in numerous state and/or federal prosecutions of individuals who have possessed, imported, or distributed controlled substances, and of individuals who have unlawfully possessed firearms and/or ammunition.  In my current position as an ATF Special Agent, I have investigated and participated in charging numerous federal cases involving violations of Title 18 United States Code, Section 922, as well as other federal offenses.

8.      I have personally participated in the investigation discussed in this affidavit, and I am familiar with the facts and circumstances of the investigation.  My role in this investigation, combined with my training and experience, information I have learned from other ATF agents and other law enforcement agencies, my discussions with witnesses involved in the investigation, and my review of records and reports relating to the investigation form the basis for the opinions I set forth in this affidavit.

## APPLICABLE STATUTES

9.      Title 18 U.S.C. § 922(a)(1)(A) prohibits a person from dealing firearms without a license.  The elements of this crime are (1) the defendant was willfully engaged in the business of dealing firearms from July 22, 2020 through August 12, 2020, and (2) the defendant did not then have a license as a firearms dealer.

## FACTS SUPPORTING PROBABLE CAUSE

### A.  Initiation of Investigation

10.      In or about July 2020, a police officer with the San Francisco Police Department ("SFPD") observed an individual on Instagram with the username "gen4stunna" publicly posting photographs of various firearms.  Specifically, the SFPD officer located the following photographs on the "gen4stunna" Instagram feed, each of which appeared to have been posted on or about July 5, 2020:

  

11.     The SFPD officer also located the following photographs on the "gen4stunna" Instagram feed, each of which appeared to have been posted on or about July 6, 2020:

 

12.     SFPD officers reviewed open source records of the phone number associated with the "gen4stunna" Instagram account and were able to identify the owner of the "gen4stunna" Instagram account as Samir GRAY.

13.     Based on my training and experience, as well as my discussions with other experienced law enforcement personnel, including other ATF agents, I know that individuals often use Instagram accounts to advertise and sell firearms.  Individuals who use Instagram as a way of selling firearms typically post photos of those firearms and then arrange the details of the purchase using Instagram direct message and follow on telephone calls.

14.     Based on my training and experience, as well as my discussions with other experienced law enforcement personnel, including other ATF agents, I believe that the reference to "wit stick" in the photographs posted by GRAY (aka "gen4stunna") refers to a magazine, and that the numbers listed on the photographs are the prices that GRAY is offering to sell the firearms for to any interested buyer.

4

**B. July 22, 2020 Controlled Purchase**

15. In consultation with ATF personnel, the SFPD officer who discovered GRAY's "gen4stunna" Instagram posts communicated with GRAY through Instagram to arrange a firearm purchase and provided GRAY the number of an ATF Confidential Informant ("CI 1").[1]

16. On or about July 22, 2020, CI 1 conducted a controlled firearm purchase with GRAY. Prior to the purchase, CI 1 and GRAY exchanged a series of recorded telephone calls and text messages to arrange the controlled purchase.

17. Before the controlled purchase, CI 1 was given government funds and outfitted with audio/video recording equipment and an audio transmitter. Another Confidential Informant ("CI 2") accompanied CI 1 during the controlled purchase.[2] CI 1 and CI 2 traveled to the area near Stevenson Street and 6th Street in San Francisco, California. CI 1 and CI 2 made contact with GRAY, who was with another person, and CI 1 purchased one Ruger .45-caliber pistol and approximately ten rounds of .45-caliber ammunition marked "SPEER 45 AUTO" from GRAY for $1,100 in government funds. Photos of the firearm and ammunition CI 1 purchased from GRAY are set forth below:

 

---

[1] CI 1 has one previous felony conviction. CI 1 has assisted ATF/law enforcement in the past and has proven reliable. CI 1 is receiving monetary compensation for his/her assistance.

[2] CI 2 has one previous felony conviction. CI 2 has assisted ATF/law enforcement in the past and has proven reliable. CI 2 is seeking consideration in an unrelated pending federal matter and has previously received monetary compensation for his/her assistance.

18.     Following the July 22, 2020 controlled purchase, CI 1 and GRAY spoke on the telephone and CI 1 told GRAY that CI 1 was a convicted felon and therefore was prohibited from possessing firearms.  GRAY agreed to sell firearms to CI 1 in the future.

**C.     August 6, 2020 Controlled Purchase**

19.     Between July 22, 2020 and August 6, 2020, CI 1 and GRAY arranged another firearm purchase through recorded telephone calls and text messages.  During these communications, GRAY agreed to sell CI 1 a Glock style 9mm pistol for $1,200.00 on August 6, 2020.

20.     On August 6, 2020, CI 1 conducted a controlled firearm purchase with GRAY. Before the controlled purchase, CI 1 was given government funds and outfitted with audio/video recording equipment and an audio transmitter.  CI 1, accompanied by CI 2, then traveled to the area near Stevenson Street and 6th Street in San Francisco, California.  CI 1 made contact with GRAY, who had arrived in a car with another person, and purchased one Glock style 9mm pistol and ten rounds of ammunition marked "GECORHTA 9x19" from GRAY for $1,200 in government funds.  A photo of the firearm and ammunition CI 1 purchased from GRAY is set forth here:



21.     During the controlled purchase, CI 1 again told GRAY that CI 1 was a felon and was prohibited from possessing firearms.  Specifically, CI 1 told GRAY that CI 1 was currently on parole and had served seven years in custody at various California prisons.  GRAY agreed to conduct future firearms transactions with CI 1 and with CI 2.

**D.    August 12, 2020 Arrest of GRAY**

22.     On August 12, 2020, CI 1 and CI 2 arranged a meeting for a controlled purchase with GRAY.   In recorded telephone calls and text messages before the scheduled purchase, GRAY agreed to sell two firearms and a drum magazine (i.e., a high-capacity magazine) to CI 1 and CI 2 for $1,900.  GRAY and CI 1 and CI 2 agreed to meet at the shopping center at Oakport Street and Edgewater Drive in Oakland, California to conduct the firearm purchase.

23.     When GRAY arrived at the shopping center, members of local and federal law enforcement attempted to arrest GRAY.  GRAY evaded arrest by hitting a law enforcement car with the car he was driving, and then fleeing in his car at a high rate of speed.  Law enforcement officers lost GRAY.

24.     After GRAY fled, an SFPD officer looked at GRAY's Instagram account, which contained a video of GRAY referencing his flight from the police.  In the video, which was posted after GRAY had fled from law enforcement, GRAY states that the police would not be able to catch him and that he would have to be killed in order to be apprehended, and he can be seen flashing a pistol.  In another video posted after GRAY fled from law enforcement, GRAY is posing with two firearms and a drum magazine, and text over the photo states, "Oh this what

y'all was comin for."  Still shots from these videos are set forth here:

 

25.    Later that day, ATF personnel arrested GRAY in Pittsburg, California.

26.    I conducted a records check and determined that GRAY does not now nor has he ever had a license to deal firearms.

<u>**REQUEST FOR SEALING**</u>

27.    Based on my training and experience, disclosure of the existence of this affidavit, the complaint, the arrest warrant, and related documents may cause GRAY to and/or potential co-conspirators to flee, destroy evidence, or conceal on-going criminal activity, which would jeopardize the progress of the ongoing investigation.  I therefore request that the Court seal this affidavit, the complaint, the arrest warrant, and related documents.

///

///

///

///

///

///

8

## **CONCLUSION**

28.     On the basis of my participation in this investigation and the information summarized above, I submit that there is probable cause to believe that, from July 22, 2020 through August 12, 2020, in the Northern District of California, GRAY violated Title 18, United States Code, Section 922(a)(1) (A) by dealing firearms without a license.


_____/s/_____
Daniel Garza
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 14th day of August 2020.


_____
HONORABLE THOMAS S. HIXSON
United States Magistrate Judge

9